UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TIM CRAFT, individually and on behalf of himself and all others similarly situated,<br><br>**Plaintiff,**<br>v.<br><br>**BMW OF NORTH AMERICA, LLC, and BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT,**<br><br>**Defendants.** | Civ. No. 2:24-cv-06826 (WJM)<br><br>OPINION |

    This is a putative class action alleging statutory and common law fraud as well as breach of express and implied warranties due to a latent defect on model year 2017-2023 BMW M440i, M550i, X1, X3, X4, X5, X6, and X7, 330, 340i, and 750i vehicles ("Class Vehicles"). Defendant BMW of North America, LLC ("BMW NA" or "Defendant") moves to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and for failure to plead with particularity and impermissible group pleading under Fed. R. Civ. P. 8 and 9(b). ECF No. 7. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons below, Defendant's motion to dismiss is **denied in part and granted in part**.

## I. BACKGROUND

    Plaintiff Tim Craft ("Plaintiff") is a citizen and resident of California. Class Action Compl. ("CAC"), ¶ 17, ECF No. 1. He purchased a certified, pre-owned 2019 X5 xDrive 40i on April 29, 2023, from BMW of San Diego, an authorized BMW dealership. *Id.* at ¶ 18. In March 2024, when Plaintiff's vehicle odometer had approximately 30,000 miles on it, he noticed after a heavy rainstorm, malfunctioning of the emergency call system, the GPS navigation system, the hands-free phone microphone, and the BMW Comfort Access system, which allows drivers to unlock the vehicle without a key and readies the engine for an automatic start. *Id.* at ¶ 22. Plaintiff's vehicle would also intermittently crank but not start. *Id.* All of these issues worsened over time. *Id.* On May 14, 2024, Plaintiff took his car to an authorized BMW dealership in Thousand Oaks, California. *Id.* at ¶ 23. The dealership discovered water ingress into the telematics control module and recommended replacement of that and of the shark fin antenna. *Id.* Plaintiff initially received a quote of $2,500 for the repairs, which were not covered under warranty, but ultimately paid $92. *Id.*

    On June 7, 2024, Plaintiff filed this action against BMW NA and Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"). Defendant BMW NA, which is a

1

Delaware company with a principal place of business in NJ, distributes BMW vehicles and sells them through its network of dealers. *Id.* at ¶ 28. It is the U.S. sales and marketing division of its parent corporation, BMW AG, organized and existing under German law, with its principal place of business in Germany. *Id.* at ¶ 27. Plaintiff claims that the seams of the shark fin antenna infiltrate with water, which causes corrosion of interior electrical components, collection of water in body cavities, and water damage to the Class Vehicles' interior ("Sealing Defect" or "Defect"). *Id.* at ¶ 2. The "California Class" is defined as: "

> All persons or entities who are: (1) current or former owners and/or lessees of a Class Vehicle; and (2) reside in California and purchased a Class Vehicle for primarily personal, family or household purposes, as defined by California Civil Code § 1791(a), in California.

*Id.* at ¶ 90. Jurisdiction is based on the Class Action Fairness Act, 28 U.S.C. § 1332(d). *Id.* at ¶ 14. The following claims are alleged against BMW NA and MBW AG ("Defendants"):

Count 1: California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* on behalf of Plaintiff and the California Class

Count 2: California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* on behalf of Plaintiff and the California Class

Count 3: California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.* on behalf of Plaintiff and the California Class

Count 4: Song-Beverly Consumer Warranty Act ("SBA"), Cal. Civ. Code § 1791.2 & 1793.2(d), Breach of Express Warranty on behalf of Plaintiff and the California Class

Count 5: Breach of Express Warranty on behalf of Plaintiff and the Nationwide Class or alternatively the California Class

Count 6: Breach of Implied Warranty on behalf of Plaintiff and the Nationwide Class or alternatively the California Class

Count 7: Magnuson-Moss Warranty Act ("Magnuson-Moss Act"), 15 U.S.C. § 2301, *et seq.*, on behalf of Plaintiff and the Nationwide Class or alternatively the California Class[1]

Count 8: Common Law Fraud on behalf of Plaintiff and the Nationwide Class or alternatively the California Class

Count 9: Unjust Enrichment on behalf of Plaintiff and the Nationwide Class or alternatively the California Class

---

[1] Plaintiff concedes the dismissal of Count 7. *See* Pl. Opp'n Br. at 2, n.1.

## II. DISCUSSION[2]

### A. Rule 12(b)(6) Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.,* 542 F.3d 59, 64 (3d Cir. 2008). This assumption of truth is inapplicable to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). A court must take well-pleaded allegations as true but need not credit "bald assertions" or "legal conclusions." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429 (3d Cir. 1997). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see id.* at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). While "[t]he plausibility standard is not akin to a probability requirement' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### B. Group Pleading

BMW NA argues that Plaintiff improperly lumps it and BMW AG together in breach of Fed. R. Civ. P. Rules 8[3] and 9(b).[4] Group pleading is impermissible because it does not provide defendants notice of the claims against each of them. *See Frederico v. Home Depot,* 507 F.3d 188, 200 (3d Cir. 2007). However, "not every pleading that groups two defendants together constitutes an impermissible group pleading." *Kong v. Johnson &*

---

[2] The parties do not dispute that Plaintiff's common law fraud, breach of warranty, and unjust enrichment claims are brought under California law. Thus, for purposes of this motion, the Court will apply California law to those claims and also follow the parties' lead in interchangeably referencing New Jersey law. *See Huber v. Taylor,* 469 F.3d 67, 74 (3d Cir. 2006) ("If there is no conflict, then the district court sitting in diversity may refer interchangeably to the laws of the states whose laws potentially apply."); *Lamonaco v. CBS, Inc.,* No. 93-1975, 1993 WL 556536, at *2 (D.N.J. July 29, 1993), *aff'd,* 27 F.3d 557 (3d Cir. 1994) ("The Third Circuit has held that when the parties agree to apply the law of a particular state, and that state has an obvious interest in the litigation, a court need not examine the choice of law *sua sponte.*") (citation omitted).

[3] Fed. R. Civ. P. Rule 8 requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

[4] Fed. R. Civ. P. Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

3

*Johnson*, No. 23-3091, 2024 WL 1640996, at *5 (D.N.J. Apr. 15, 2024). "To assess the distinction between a permissible and impermissible group pleading, a court must consider whether a pleading is 'impermissibly vague' or otherwise 'injects an inherently speculative nature into the pleadings, forcing both the [d]efendants and the Court to guess who did what to whom when.'" *Id.* (citing *Yu-Chin Chang v. Upright Fin. Corp.*, No. 19-18414, 2020 WL 473649, at *3 (D.N.J. Jan. 28, 2020)). Here, the alleged misconduct is not unclear. BMW NA has sufficient notice of the claims against it and the grounds upon which those claims rest. Each Defendant's exact involvement can be discovered at a later stage in the litigation. *Yu-Chin Chang*, 2020 WL 473649, at *3.

Moreover, Plaintiff has identified BMW NA's role as a Delaware company responsible for distribution, sales and marketing separate from BMW AG's role as the German parent company. Although improper conduct is alleged against "BMW" or "Defendants," terms defined in the CAC as including both BMW NA and BMW AG, Plaintiff alleges Defendants jointly perform the "design, manufacture, distribution, service, repair, modification, installation, and decisions regarding the Class Vehicle" Sealing Defect and act as "agent[s] and/or employee[s] of each other … with full knowledge, permission, and consent of each other." CAC ¶¶ 31, 36. In an action for an alleged fraudulent concealment perpetrated by sophisticated corporate entities that are related to each other, the plaintiff need not distinguish the specific roles that each entity played in the fraudulent concealment to meet the Rule 9(b) standard. *See e.g.*, *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 226 (D.N.J. 2020) (finding no improper group pleading where plaintiffs asserted common allegations against defendants because they were joined through same corporation and acted as alter egos of each other); *Bullard v. Jaguar Land Rover Auto. PLC*, No. 20-14464, 2023 WL 4845873, at *6 (D.N.J. July 28, 2023) (declining to dismiss based on group pleading "where the Defendants are intertwined corporate entities and discovery can clarify the precise role of each."). Defendant's motion to dismiss for improper group pleading is **denied.**

C. Fraud-Based Claims (Counts 1, 2, 3, 8)

Consumer fraud claims, including those under California law, "must meet the heightened pleading requirements of Rule 9(b)." *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 451 (D.N.J. 2012) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)). Defendant moves to dismiss Plaintiff's common law and statutory fraud-based claims for failure to sufficiently plead the required elements of knowledge and reliance. BMW NA also argues that the FAL claim cannot proceed because no affirmative misrepresentation has been alleged.

*1. Knowledge*

Claims of deceptive practices and fraud require plaintiffs to sufficiently allege knowledge of defect at time of sale. *See e.g., Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012). Plaintiff claims Defendants had longstanding knowledge of the

4

Defect but failed to disclose it to Plaintiff and other consumers or to repair adequately the Class Vehicles at no cost to consumers. CAC ¶¶ 2, 5-6. Specifically, Plaintiff alleges that Defendants knew of the Sealing Defect through: 1) pre-sale testing including "vehicle load analysis vehicle" nicknamed FABEAN (CAC ¶¶ 57-65); 2) complaints to the National Highway Traffic Safety Administration ("NHTSA") of emergency call system malfunction on dashboard displays (¶¶ 66-68); 3) an October 5, 2022 technical service bulletin, SIB 65 15 22 ("SIB") titled "ROOF-MOUNTED ANTENNA HOUSING SEAL NOT ADHERING" warning that that "can allow water ingress into the vehicle, possibly damaging components and equipment." (¶¶ 69-76, CAC, Ex. 1, ECF No. 1-2); and 4) complaints on heavily trafficked internet forums regarding water infiltration issues from defective sealing (¶¶ 77-82). BMW NA disputes that these allegations sufficiently plead pre-sale knowledge.

The Court finds that while BMW NA's pre-sale knowledge of the Sealing Defect cannot be inferred from either the pre-sale testing or the online complaints, the NHTSA complaints and SIB do support such an inference. The pre-production durability testing includes simulations to determine "stresses that arise during a journey," "verifies the calculated load forecasts," and includes a safety-specific testing component that "can replicate the complex load conditions or road loads." *Id.* at ¶¶ 62, 63. Even if BMW NA, as a distributor, had knowledge of pre-production testing, it is unclear how such general quality control measures would have alerted BMW NA to the Sealing Defect. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146-47 (9th Cir. 2012) (agreeing knowledge of defect not sufficiently pled where manufacturer's alleged access to information regarding risk of overheating was speculative and did not "suggest how any tests or information could have alerted [the manufacturer] to the defect."); *Cho v. Hyundai Motor Co., Ltd.*, 636 F. Supp. 3d 1149, 1171 (C.D. Cal. 2022) (finding claim that pre-sale exhaust emissions system's durability testing would have revealed oil consumption defect was conclusory and insufficient to imply knowledge). As for the "hundreds" of online comments on "numerous websites devoted to automotive reviews, automobile repairs, car complaints" related to Class Vehicles' defective sealing of the shark fin antenna, CAC ¶ 77, there is no indication when those online comments were posted, whether any were prior to Plaintiff's purchase of his BMW, or how Defendant knew of the online comments. Plaintiff's belief that "BMW was undoubtedly aware of these complaints because consumers took their Class Vehicles to BMW's authorized dealerships for diagnosis," Pl. Opp'n Br. at 19, is a bald assertion without any factual support. *See e.g., Granillo v. FCA US LLC*, No. 16-153, 2016 WL 9405772, at *9 (D.N.J. Aug. 29, 2016) (noting courts "have repeatedly found that consumer complaints on third-party websites are not sufficient to infer a manufacturer's knowledge of a product defect where there are no allegations that the manufacturer saw such complaints."); *Baltazar v. Apple, Inc.*, No. 10-3231, 2011 WL 588209, at *4 (N.D. Cal. Feb. 10, 2011) ("Plaintiffs fail to allege with any specificity how Apple purportedly learned of the problems alleged in the FAC or what problems were known or should have been known to it before it made the representations at issue.").

5

In contrast, the NHTSA complaints and SIB do support Plaintiff's claim that Defendant had pre-sale knowledge of the Defect. First, while service bulletins should not be used as potential admissions of liability or defect, they may be used to show knowledge of a defect. *Ponzio*, 447 F. Supp. 3d at 229; *Am. Honda v. Super. Ct.*, 132 Cal. Rptr. 3d 91, 100 (2011). Second, 3 of the 14 complaints submitted to the NHTSA mentioned in CAC predate Plaintiff's purchase date and report a malfunction consistent with the Defect. *See* CAC ¶ 68 (alleging NHTSA ID 11456014 (dashboard display of malfunctioning emergency call system), ID 11456456 ("emergency call malfunction"), ID 11498616 (malfunctioning SOS display, "dealer says the rear fins have water intrusion which corroded the "electrical fins")); *see also Afzal v. BMW of N. Am., LLC*, No. 15-8009, 2017 WL 3207232, at *5 (D.N.J. July 27, 2017) (rejecting defendant's claim that it lacked knowledge because of "too few" complaints where internet posts identified specific defect). Although the only complaint that mentions "water intrusion" in the rear antennae does not pertain to an X-5, and likewise, the SIB only applies to BMW X3, X5, X7 Sports Activity Vehicles and X4, X6 Sports Activity Coupes, Plaintiff alleges that the same Sealing Defect exists in *all* Class Vehicles. *See* CAC ¶¶ 2, 39-55. Taking that allegation as true, the SIB and complaints to NHTSA make Defendant's pre-sale knowledge of the Sealing Defect plausible. *See e.g., In re Subaru Battery Drain Prod. Liab. Litig.*, No. 20-03095, 2021 WL 1207791, at *23 (D.N.J. Mar. 31, 2021) (finding that although technical service bulletins did not involve same year and model as class vehicles, where plaintiffs alleged defective electrical system had "been implemented in all Subaru models," knowledge of problems in non-class vehicles could show defendants knew same problems affected class vehicles with same electrical system). In sum, although every allegation does not support an inference of pre-sale knowledge, the totality of allegations construed in Plaintiff's favor are sufficient to render the claim of pre-sale knowledge plausible. *See Afzal*, 2017 WL 3207232, at *6.

### 2. Reliance

Defendant contends that the CLRA, UCL, and common law fraud claims must be dismissed because Plaintiff fails to allege reliance on either a misrepresentation or omission regarding his vehicle's shark fin antenna. "To prove reliance on an omission, a plaintiff must show that the defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." A plaintiff need only prove that the omission was a substantial factor in his decision by simply showing first "that, had the omitted information been disclosed, one would have been aware of it" and second, he would have "behaved differently." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (citing *Mirkin v. Wasserman*, 23 Cal.Rptr.2d 101, 107 (1993)).

The first prong does not require Plaintiff to plead that he actually viewed a specific advertisement. *See Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 967 (N.D. Cal. 2018). Rather, omissions cases are "premised on the defendant's affirmative duty to disclose" and plaintiffs "must simply 'establish a plausible method of disclosure and… that they would have been aware of information disclosed using that method.'" *Id.* (citing *Daniel*, 806 F.3d

6

at 1226). The "'proper focus...is...what channels of information customers depend upon and whether the defendant could have taken action to disseminate information through those channels[.]'" *Id.* (citing *Sloan v. General Motors LLC*, 287 F. Supp. 3d 840, 875, 2018 WL 784049, at *21 (N.D. Cal. 2018)). Here, Plaintiff claims that prior to purchase, he "discussed the features of the vehicle with BMW's sales representatives at BMW of San Diego and reviewed the vehicle's window sticker" and that neither of those sources disclosed the Defect. CAC ¶ 20. That is sufficient to show that Plaintiff would have been aware of the disclosure had Defendants disclosed the Defect to its authorized dealerships. *See e.g., Daniel*, 806 F.3d at 1226 (finding that although plaintiffs did not view any advertising materials produced by Ford prior to purchase, plaintiffs' interaction with and receipt of information from sales representatives at authorized Ford dealerships was "sufficient to sustain a factual finding that Plaintiffs would have been aware of the disclosure if it had been made through Ford's authorized dealerships"); *Baranco*, 294 F. Supp. 3d at 967-68 (drawing inference that plaintiff "could have received such information had Ford publicized the defect through the dealer, as it is highly improbable that she purchased her vehicle from a dealership without any exchange of information whatsoever (or at least an opportunity for such an exchange).").

Plaintiff's allegations also satisfy the second prong. "That one would have behaved differently can be presumed, or at least inferred, when the omission is material." *Daniel*, 806 F.3d at 1225 (citation omitted). "Alleged defects that create 'unreasonable safety risks' are considered material." *Id.* (concluding it can be presumed that nondisclosure of safety risk impacted purchase decision). Because Plaintiff alleges that the Sealing Defect poses a "substantial safety threat," *see e.g.,* CAC ¶ 44, it can plausibly be inferred that had the Defect been disclosed through the window sticker or sales representatives, Plaintiff "would not have purchased his vehicle, or would have paid less for it." *Id.* at ¶ 25.

Accordingly, Defendant's motion to dismiss the statutory and California common law fraud claims in Counts 1, 2, and 8 for failure to plead knowledge or reliance is **denied.**

### 3. *Affirmative Misrepresentation (Count 3 FAL Claim)*

Under the FAL, it is unlawful for any person "to make or disseminate or cause to be made or disseminated before the public...any statement...which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. A majority of California Courts have held that there can be no FAL claim on pure omission where there is no "statement" at all, that is, a plaintiff has not alleged any actual misleading or untrue statements. *Ponzio*, 447 F. Supp. 3d at 248 (citing *Norcia v. Samsung Telecommunications Am., LLC*, No. 14-00582, 2015 WL 4967247, at *8 (N.D. Cal. Aug. 20, 2015) (collecting cases)); *see e.g. Dana v. Hershey Co.,* 180 F. Supp. 3d 652, 669 (N.D. Cal. 2016), *aff'd*, 730 F. App'x 460 (9th Cir. 2018) (dismissing FAL claim based on pure omissions where plaintiff alleged failure to disclose on Hershey chocolate packaging that some cocoa originated at farms that use slave

7

labor). When a FAL claim is predicated on a theory of omission, a plaintiff must identify an actual affirmative statement by defendant that was made false by the omission of some material fact. *Stewart v. Electrolux Home Prod., Inc.*, 304 F. Supp. 3d 894, 908 (E.D. Cal. 2018). In this case, as Plaintiff has not identified any statement regarding shark fin antennas purportedly rendered false or misleading due to an omission of a material fact, the FAL claim is **dismissed without prejudice.**

### D. Warranty Claims (Counts 4, 5, 6)

#### 1. *Express Warranty (Counts 4 and 5)*

The "New Vehicle Limited Warranty" for 2019 BMW X1, X2, X3, X4, X5, X6 ("NVLW") offers a 4-year/50,000-mile warranty, which states "BMW of North America, LLC (BMW NA) warrants during the Warranty Period the 2019 U.S.- specification BMW vehicles distributed by BMW NA or sold through the BMW NA European Delivery Program against defects in materials or workmanship to the first retail purchaser, and each subsequent purchaser." CAC ¶ 84, Ex. 2 at 2, ECF No. 1-3. Defendant asserts that the express warranty claims (Counts 4 and 5) fail because the 4 year/50,000 mile (whichever occurs first) NVLW on Plaintiff's pre-owned 2019 vehicle would have expired prior to May 2024 when he took his car for repairs. *See Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) (alteration in original) ("an express warranty does not cover repairs made after the applicable time ... ha[s] elapsed." (quoting *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir.1986)); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (same). "'[L]atent defects' discovered after the term of the warranty are not actionable." *Duquesne*, 66 F.3d at 616 (citing *Abraham*, 795 F.3d at 249–50).

Plaintiff does not dispute that he sought repairs to his vehicle outside the warranty period but does argue that the mileage and temporal warranty limits do not apply because they are unconscionable. CAC ¶¶ 86-88. Courts may refuse to enforce contracts that are unconscionable. *Lim v. TForce Logistics,* LLC, 8 F.4th 992, 1005 (9th Cir. 2021) (citing Cal. Civ. Code § 1670.5(a)). "[U]nconscionability 'has both a procedural and a substantive element' but 'need not be present in the same degree.'" *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024) (citing *OTO, L.L.C. v. Kho*, 8 Cal.5th 111, 125 (2019); *Rodriguez v. Raymours Furniture Co.*, 138 A.3d 528, 541 (N.J. 2016). Procedural and substantive unconscionability are evaluated on a sliding scale. *Poublon v. C.H. Robinson Co.,* 846 F.3d 1251, 1260 (9th Cir. 2017). Substantive unconscionability focuses on whether the actual terms of an agreement are "overly harsh" or "shock the court's conscience." *Miller v. Ford Motor Co.*, 620 F. Supp. 3d 1045, 1057 (E.D. Cal. 2022); *Skeen v. BMW of N. Am., LLC*, No. 13-1531, 2014 WL 283628, at *13 (D.N.J. Jan. 24, 2014). Procedural unconscionability focuses on "oppression" arising from unequal bargaining power and "surprise" due to hidden terms. *Miller*, 620 F. Supp. 3d at 1057.

A 4 year/50,000 mile vehicle warranty is not *per se* unconscionable, *see Goldstein v. Gen. Motors LLC*, 445 F. Supp. 3d 1000, 1015 (S.D. Cal. 2020); *Skeen*, 2014 WL 283628, at *14, but Plaintiff alleges that the warranty limits were substantively unconscionable because Defendants knew of the Defect and its safety risks but failed to disclose the Defect and continued to market Class Vehicles as safe and reliable. CAC ¶ 88. However, "simple knowledge of a defect does not render a warranty unconscionable." *Taylor v. BMW of N. Am., LLC*, No. 20-1994, 2021 WL 1186777, at *10-11 (D.N.J. Mar. 29, 2021)), *dismissed*, No. 21-1933, 2021 WL 5272228 (3d Cir. July 26, 2021); *Seifi v. Mercedes-Benz USA, LLC*, 2013 WL 2285339, at *5 (N.D. Cal. May 23, 2013) (finding 4 year/50,000 mile warranty not unconscionable even accepting as true that Mercedes knew about defective gears). Indeed, "[a]s a manufacturer, Defendant is within its right to create a limited remedy that minimizes its costs and obligations based on its prediction of the rate of failure of particular parts." *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 597 (D.N.J. 2016). Warranty limits may be unconscionable where a plaintiff pleads additional facts such as a defendant's manipulation of warranty terms to avoid coverage. *See e.g., Amato v. Subaru of Am., Inc.*, No. 18-16118, 2019 WL 6607148, at *8–9 (D.N.J. Dec. 5, 2019). Here, Plaintiff has not alleged manipulation or other facts to suggest that the NVLW durational limits were overly harsh or shocked the conscience.

To show procedural unconscionability, Plaintiff claims that there was unequal bargaining power because he lacked pre-sale knowledge of the Defect, the ability to negotiate the terms of the warranties, and had no other options for purchasing alternative warranty coverage. CAC ¶ 87. The Court acknowledges the lack of consensus among courts on this issue. *Compare e.g., Fisher v. Honda N. Am., Inc.*, No. 13-09285, 2014 WL 2808188, at *9 (C.D. Cal. June 12, 2014) (finding broad allegations of lack of meaningful choice and gross disparity in bargaining power on warranty limits do not establish procedural unconscionability); *Amato v. Subaru of Am., Inc.*, 2019 WL 6607148, at *8 (noting that lack of knowledge of defect, ability to bargain, and meaningful alternatives were conclusory claims), *with Goldstein*, 445 F. Supp. 3d at 1015 ("Plaintiffs have adequately alleged procedural unconscionability by pleading a gross disparity in bargaining power and a lack of meaningful choice in accepting the Warranty."); *Stratis v. BMW of N. Am., LLC*, No. 22-06929, 2023 WL 3092188, at *9 (D.N.J. Apr. 26, 2023) ("imbalance of knowledge regarding the existence of a defect can create the disparate bargaining power required to show procedural unconscionability at the motion to dismiss stage"). Upon careful review, the Court concludes that here, claims of unequal bargaining power are conclusory and do not satisfy the *Twombly* and *Iqbal* standards to properly plead procedural unconscionability. In any event, both procedural and substantive unconscionability must be present for a court to invalidate a contract or clause. *Miller*, 620 F. Supp. 3d at 1057. Because Plaintiff fails to sufficiently plead that the NVLW mileage and temporal warranty limits are unconscionable, the breach of express warranty claim in Count 5 is **dismissed without prejudice**.

The viability of Plaintiff's express warranty claim under the SBA[5] is contingent upon repairs of the Defect being made within the applicable express warranty period. *See Sauer v. Subaru of Am., Inc.*, No. 18-14933, 2020 WL 1527779, at *7 (D.N.J. Mar. 31, 2020) ("[W]here '[p]laintiffs have not alleged any facts that the vehicle had problems or any covered systems failed within the express warranty period,' they have failed to state a plausible claim for breach of the express warranty under the [SBA]."). Because the repairs were not made within the durational limits of the NVLT, the breach of express warranty claim under the SBA in Count 4 is **dismissed without prejudice.**

### 2. *Implied Warranty (Count 6)*

The NVLW limits "the duration of any implied warranties, including the implied warranty of merchantability" to the duration of the express warranty. CAC, Ex. 2 at 6, ECF No. 1-3; *see Nobile v. Ford Motor Co.*, No. 10-1890, 2011 WL 900119, at *4 (D.N.J. Mar. 14, 2011) ("New Jersey's N.J.S.A. 12A:2–317 limits any implied warranty to the terms of an express warranty."); *Pascal v. Nissan N. Am., Inc.*, No. 20-00492, 2022 WL 2784393, at *5 (C.D. Cal. June 8, 2022) ("Under California law, a manufacturer may place limitations on implied warranties." (citing Cal. Com. Code § 2316; Cal. Civ. Code § 1791.1(c)). Plaintiff posits that the implied warranty disclaimers are enforceable because he did not receive them at the time of sale. *See Clark v. LG Elecs. U.S.A., Inc.*, No. 13-485, 2013 WL 5816410, at *12 (S.D. Cal. Oct. 29, 2013) ("Disclaimers of implied warranties must be made available to the consumer prior to the sale of the product in order to be binding on the consumer."). Not only are BMW NA's warranties publicly available online,[6] it is incongruous for Plaintiff to argue that the implied warranty limitations contained in the NVLW are not binding because he never received them while also seeking to extend the benefits of the warranty that he insists did not form the basis of the bargain. As the implied warranty is limited to the duration of the express warranty, the breach of implied warranty claim in Count 6 is **dismissed without prejudice**.

### E. Unjust Enrichment (Count 9)

Plaintiff claims that he conferred a benefit on Defendants because the money he used to purchase his vehicle from the authorized dealership flowed to Defendants. *See* CAC ¶ 174. Even if, as Defendant argues, there is no claim for unjust enrichment under California law, *see Melchior v. New Line Prods., Inc.*, 106 Cal.App.4th 779, 793 (2003), a court may construe unjust enrichment "as a quasi-contract claim seeking restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221, 231 (2014)); *see also McGuire v.*

---

[5] The SBA provides that "[a]ny buyer of consumer goods who is damaged by a failure to comply with any obligation under this chapter or under an implied or express warranty or service contract may bring an action for the recovery of damages and other legal and equitable relief." Cal. Civ. Code § 1794. Plaintiff does not allege a breach of implied warranty under the SBA. Pl.'s Opp'n Br. at 29, n.7.

[6] *See* Maintenance Resources | BMW USA

10

*BMW of N. Am., LLC*, 13–7356, 2014 WL 2566132, at *3 (D.N.J. June 6, 2014) ("New Jersey does not recognize unjust enrichment as an independent tort cause of action.").

However, "unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir.1996)); *Resnick v. Hyundai Motor Am., Inc.*, No. 16-00593, 2017 WL 1531192, at *22 (C.D. Cal. Apr. 13, 2017) ("[a]n action based on quasi-contract cannot lie where a valid express contract covering the same subject matter exists between the parties." (internal quotes and citation omitted)); *see also Rose v. Ferrari N. Am., Inc.*, No. 21-20772, 2024 WL 1209185, at *12 (D.N.J. Mar. 20, 2024) ("where there is an express contract covering the identical subject matter of the claim, plaintiff[s] cannot pursue a quasi[-]contractual claim for unjust enrichment." (internal quotes and citation omitted)). "A breach of an express warranty covers the same subject matter as a breach of an express contract." *Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 924–25 (E.D. Cal. 2020) (citing *Smith v. Allmax Nutrition, Inc.*, No. 15-00744, 2015 WL 9434768, at *10 (E.D. Cal. Dec. 24, 2015)). Thus, Plaintiff's quasi-contract claim fails. *See e.g., Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1159 (S.D. Cal. 2021) (dismissing quasi-contract claim with prejudice because plaintiffs cannot bring quasi-contract claim while bringing an express warranty claim); *see also Miller*, 620 F. Supp. 3d at 1077–78 (dismissing unjust enrichment claims with prejudice due to existence of express agreements even where express and implied warranty claims were also dismissed because claims occurred outside warranty timeframe). The unjust enrichment claim in Count 9 is **dismissed with prejudice.**

### F. Standing to Allege Nationwide Class Claims

Plaintiff asserts breach of warranty, common law fraud, and unjust enrichment claims on behalf of himself, the California class, and also on behalf of a nationwide class. Defendant disputes Plaintiff's standing to bring claims under the laws of states in which he did not reside or suffer any alleged injury. In response, Plaintiff insists that a standing challenge is premature and more appropriately is a predominance issue to be decided at the class certification stage. The Court disagrees. It is "[o]nly after the Court addresses the class representatives' Article III standing" that a court can "analyze Federal Rule of Civil Procedure 23's certification requirements." *Tijerina v. Volkswagen Grp. of Am., Inc.*, No. 22-18755, 2023 WL 6890996, at *7 (D.N.J. Oct. 19, 2023) (citing *Mielo v. Steak 'N Shake Operations, Inc.*, 897 F.3d 467, 480 (3d Cir. 2018); *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 366 (3d Cir. 2015) ("Before even getting to the point of class certification, however, class representatives need to present a justiciable claim.").

Next, notwithstanding any split in decisions on this issue, because a plaintiff must "demonstrate standing for each claim he seeks to press," *DaimlerChrysler Corp. v. Cuo*, 547 U.S. 332, 352 (2006), the Court concludes that "named Plaintiffs 'lack standing to assert claims on behalf of unnamed plaintiffs in jurisdictions where Plaintiffs have suffered

11

no alleged injury." *Cohen v. Subaru of Am., Inc.*, No. 12-08442, 2022 WL 721307, at *6 (D.N.J. Mar. 10, 2022); *Snowdy v. Mercedes-Benz USA, LLC*, No. 23-1681, 2024 WL 1366446, at *7 (D.N.J. Apr. 1, 2024) ("named Plaintiffs can only assert claims on behalf of individuals in states where at least one named Plaintiff has standing for that claim."); *Rose*, 2024 WL 1209185, at *4 (same); *McGuire*, 2014 WL 2566132, at *6 (recognizing split but agreeing that prior to class certification, named plaintiff must demonstrate standing to assert claims under the laws of the states in which he does not reside or suffered no injury).[7] Allowing a named plaintiff in a putative action with no injuries in relation to the laws of other states to assert the claims of proposed plaintiffs "'would allow named plaintiffs to embark on lengthy class discovery with respect to injuries in potentially every state in the Union.'" *McGuire*, 2014 WL 2566132, at *6 (citing *In re Magnesium Oxide*, No. 10-5943, 2011 WL 5008090, at *19 (D.N.J. Oct. 20, 2011)).

Plaintiff lacks standing to bring claims on behalf of a nationwide class under the laws of states where he did not reside or suffer any injury. The nationwide claims are **dismissed without prejudice.**

### III.   CONCLUSION

For the reasons noted above, Defendant's motion to dismiss is **granted in part and denied in part.** As to claims dismissed without prejudice, Plaintiffs may file an amended pleading curing the deficiencies discussed herein within 30 days of the date of this Opinion.

_____
WILLIAM J. MARTINI, U.S.D.J.

Date: December 23, 2024

---

[7] *But see Back2Health Chiropractic Ctr., LLC v. Sentinel Ins. Co., Ltd.*, No. 20-6717, 2021 WL 960875, at *6 (D.N.J. Mar. 15, 2021) ("Both *Mielo* and *Neale* lend support to Plaintiff's position – that as long as the named plaintiff has standing, it can bring claims on behalf of a nationwide class"); *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, No. 19-2875, 2022 WL 1013945, at *5 (D.N.J. Apr. 5, 2022) (agreeing with *Back2Health*). *Back2Health* and *In re Valsartan* read *Neale* and *Mielo* too broadly. *See Tijerina*, 2023 WL 6890996, at *8, n.3 (declining to "expand[] the holding in *Neale* to permit named class representatives who would not traditionally have Article III standing to bring claims on behalf of unnamed, putative class members who may have standing."); *Snowdy*, 2024 WL 1366446, at *6 (same). In *Neale*, the Court of Appeals "squarely h[e]ld that unnamed, putative class members need not establish Article III standing" and that the "cases or controversies" requirement was satisfied so long as a class representative has standing." *Neale*, 794 F.3d at 362. In *Mielo*, the court found plaintiffs had standing to seek relief beyond the Pennsylvania locations where they were injured, but plaintiff's claims there arose "under a violation of federal law which would not present the same issues regarding standing to assert various state-law claims." *Tijerina*, 2023 WL 6890996, at *8, n.2. Neither *Mielo* nor *Neale* held that "named plaintiffs can assert claims on behalf of putative class members which the named plaintiffs themselves do not have standing to bring." *Id.* at *8, n.2.