**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **TIM CRAFT, individually and on behalf of himself and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**BMW OF NORTH AMERICA, LLC, and BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT,**<br><br>**Defendants.** | Civ. No. 2:24-cv-06826 (WJM)<br><br>**OPINION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AWARD OF ATTORNEYS' FEES AND EXPENSES, AND CASE CONTRIBUTION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Presently before the Court in this suit against Defendants BMW of North America, LLC ("BMW NA" or "Defendant"), and Bayerische Motoren Werke Aktiengesellschaft are the unopposed motions of Plaintiff Tim Craft, individually and on behalf of the preliminarily certified Settlement Class ("Plaintiff") for: 1) final approval of a class action settlement, and 2) an award of attorneys' fees and expenses and a compensatory award for the lead Plaintiff pursuant to the Settlement Agreement ("SA"). ECF No. 38, 41. For the reasons stated below, the motion for final approval is **GRANTED** and the settlement is finally **APPROVED**. Plaintiff's motion for attorneys' fees and cost is **GRANTED IN PART AND DENIED IN PART.**

## I. BACKGROUND[1]

### A. Facts and Procedural History

Plaintiff is a purchaser of a 2019 BMW X-5 from an authorized dealership in California. This action, filed on June 7, 2024, alleged statutory and common law fraud as well as breach of express and implied warranties due to a latent "Sealing Defect" on the Shark-Fin Antenna of certain model year BMWs. ECF No. 1. BMW NA filed a motion to dismiss on August 20, 2024, which was parted in part and denied in part. ECF Nos. 16-17. After discovery began, the parties engaged in settlement negotiations, which included a full day of mediation before Hon. Stephen M. Orlofsky (Ret.), and eventually, Plaintiff and BMW NA executed the Settlement Agreement dated December 30, 2025. Decl. of Matthew D. Schelkopf ("Schelkopf Decl.") Ex. A, ECF No. 35-4.

---

[1] All capitalized terms that are not defined herein have the same meaning as defined in the SA, ECF No. 35-4.

On March 2, 2026, this Court granted preliminary approval of the Settlement, ("Preliminary Approval Order") as "fair, reasonable, and adequate" under Fed. R. Civ. P. 23. Preliminary Approval Order, ECF No. 37. The Court also preliminarily certified the Class for settlement purposes only and approved the proposed Settlement notice documents and notice plan. *Id.* ¶¶ 3, 10. A hearing on the final approval of the Settlement (the "Fairness Hearing") was held on July 28, 2026.

**B. <u>The Proposed Settlement</u>**

Pursuant to the SA, "Settlement Class Members" are "all current and former owners and lessees of a Class Vehicle in the United States, including the District of Columbia and Puerto Rico who do not exclude themselves from (opt-out of) the class." SA, ¶ 1(ff). The "Settlement Class Vehicles" are model year 2019-2020 BMW X3, X4, X5, X6, and X7 with production ranges of November 1, 2018 to March 31, 2020. *Id.* ¶ 1(i), (jj). There are more than 463,000 current and former owners and lessees of approximately 233,000 Settlement Class Vehicles.

The SA sets forth the terms and conditions for the proposed settlement, which includes: 1) Class Vehicle Sealing-Defects to be repaired by a BMW Center free of charge during an Extended Warranty Period of 10 years or 120,000 miles (whichever occurs first) from the car's in-service date, to run with the Class Vehicle; 2) BMW Centers to provide free Sealing-Defect Repairs for any Class Vehicle regardless of age or mileage for 60 days after the Final Approval Order; 3) for Sealing-Defect Repairs at BMW Centers prior to the Settlement, Settlement Class Members can file claims for reimbursement of 100% of the repair costs of Class Vehicles under 10 years or 120,000 miles (whichever comes first) from the vehicle's in-service date at the time of the repair; 4) for reimbursement of one qualifying Sealing Defect Repair costs incurred at certain third-party repair shops prior to the Settlement, Settlement Class Members can file claims up to $2,000.00 for repair costs of a Class Vehicle under 10 years or 120,000 miles from the vehicle's in-service date at the time of repair. *Id.* ¶¶ 9-11.

Under the SA, Defendant agreed to pay, separate and apart from any relief provided to the Settlement Class, Settlement Class Counsel Fees and Expenses not to exceed $800,000.00 in the aggregate. *Id.* ¶¶ 44, 46. Settlement Class Counsel would also ask the Court for a Settlement Class Representative Service Payment of $5,000 for the Class Representative which Defendant will also pay. *Id.* ¶¶ 45, 46.

**C. <u>Notice</u>**

On May 18, 2026, the Claims Administrator, Kroll Settlement Administration, caused the mailing of 463,950 Settlement Notices and Claim Forms (the "Notice Packets") via first-class mail. Decl. of Elias Rose ("Rose Decl.") ¶ 10, ECF No. 40. After re-mailing Notice Packets returned as undeliverable to updated addresses, Kroll believes that Notice

Packets likely reached 451,886 of the 463,950 Settlement Class Members, which equates to a reach rate of the direct mail notice of approximately 97.4%. *Id.* ¶ 13.

The Settlement Notice and Revised Claim Form advise of the Settlement and includes a Settlement website (www.sharkfinsettlement.com) that provides detailed information concerning the Settlement including additional information about the Settlement, relevant deadlines, a FAQ section, and pertinent documents including the Settlement Agreement. SA, Ex. A, ECF Nos. 35-4, 36. The website also includes claim submission and "contact us" links, as well as a toll-free number, (833) 447-8559, for additional information.

The deadline for Settlement Class Members to file a Claim Form is August 27, 2026. As of July 14, 2026, Kroll has received 1,085 Claim Forms through the mail and 1,977 Claim Forms filed electronically through the Settlement Website, for a total of 3,062 claims received. Rose Decl. ¶ 15. Kroll is still in the process of reviewing and validating Claim Forms. *Id.*

The deadline for any objections to or exclusion from the Settlement was June 30, 2026. As of July 14, 2026, Kroll has received thirty (30) Requests for Exclusion (Opt-Outs) (0.0067%), one (1) late Request for Exclusion, and one (1) Objection to the Settlement which was subsequently withdrawn. *Id.* ¶ 18, Ex. E (Opt Out List); Objection Withdrawal, Mot. for Final Approval, Ex. A, ECF No. 41-3.

As of July 14, Kroll has billed $448,793.30 for services and fees incurred in the administration of this matter. *Id.* ¶19. Kroll estimates that it will bill an additional $163,000.00 to $183,000.00 to complete the administration of this Settlement. *Id.*

## II. DISCUSSION

Plaintiff asks the Court to: (1) approve the Settlement Agreement as fair, reasonable, and adequate; (2) certify the Class under Rule 23 to effectuate the class settlement; and (3) award attorneys' fees and expenses to Class Counsel and Service Awards in the amount of $5,000 to the Class Representative.

### A. Motion to Approve Settlement

#### 1. Adequacy of Notice

Before approving the settlement of a class action, the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) requires notice of: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on

members under Rule 23(c)(3)." In addition, notice of the settlement must be the best that is "practicable under the circumstances," and "clearly and concisely state in plain, easily understood language." Fed. R. Civ. P. 23(c)(2). The form and manner of the notice must satisfy the requirements of due process. *Shapiro v. Alliance MMA, Inc.*, No. 17-2583, 2018 WL 3158812, at *7 (D.N.J. June 28, 2018).

Here, the Settlement Notice provided to Class Members satisfies the requirements of Fed. R. Civ. P. 23 and due process. The notices were provided to Class Members by a third-party claims administration and describe: (1) the nature of the action and the bases for the claims, 2) the definition of the certified class, (3) the key terms of the Settlement, the process for each Class Member to receive Settlement benefits, and the release of claims against Defendant BMW NA, (4) the binding nature of the Settlement on each Class Member, and (5) the rights of each Class Member to retain separate legal counsel, object to the Settlement, opt-out of the Class, or appear at the Fairness Hearing, as well as the deadlines by which to do so. *See* Settlement Agreement, Settlement website. Such notice "contain[ed] sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights." *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013) ("*Baby Prods.").*

Likewise, the manner in which Class Members were notified was the best practicable under the circumstances and also satisfies the requirements of Rule 23 and due process. Potential Class Members were notified by mail in accordance with the Court's Preliminary Approval Order. *See* March 2, 2026 Preliminary Approval Order, ECF No. 37.

**2. *Girsh* and *Prudential* Considerations of Settlement**

Fed. R. Civ. P. Rule 23(e) requires court approval of any proposed settlement of a class action. A court may, in its discretion, approve a proposed class action settlement "only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* ("*Prudential*"), 148 F.3d 283, 299, 316 (3d Cir.1998). While there is a general presumption in favor of a settlement in the class action context, the Court also "acts as a fiduciary who must serve as a guardian of the rights of absent class members." *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* ("*General Motors*"), 55 F.3d 768, 785 (3d Cir.1995) (citations and quotations omitted).

The Third Circuit has identified nine factors for evaluating a class action settlement: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a

possible recovery in light of all the attendant risks of litigation. *Girsh v. Jepson,* 531 F.2d 153, 157 (3d Cir. 1975).

Beyond these nine *Girsh* factors, additional factors the Court may consider when appropriate and relevant, include: the maturity of the underlying substantive issues; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable. *Prudential,* 148 F.3d at 323. An additional inquiry to test the reasonableness of a settlement is whether the settlement provides a "direct benefit" to members of the class. *See Baby Prods,* 708 F.3d at 174. "These factors are a guide and the absence of one or more does not automatically render the settlement unfair." *In re Am. Family Enters.,* 256 B.R. 377, 418 (D.N.J. 2000) (quotations omitted). Instead, the Court "must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under *Girsh.*" *In re Valeant Pharms. Int'l Inc. Sec. Litig.*, No. 15-07658, 2020 WL 3166456, at *7 (D.N.J. June 15, 2020) ("*Valeant*"). The Court addresses each *Girsh* factor, and, where appropriate, *Prudential* factor, in turn.[2]

### i. The complexity, expense and likely duration of the litigation

Analysis of the first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016) ("*NFL Players Litig.*"). Here, the costs, complexity and likely duration of this case strongly favor settlement. Class actions alleging automotive defects are complex and present unique issues, as the vehicles continue to age and put on miles. Since formal discovery has not yet been completed, significant expense and discovery remain. Plaintiff is a California resident and thus any certified litigation class would likely only cover California residents. Conversely, the Settlement secures substantial benefits for the nationwide Settlement Class without the delay, risk and uncertainty of continued litigation. The Settlement Class would also receive prompt benefits including warranty extension for Sealing Defect repairs and reimbursement of previously made Sealing Defect repairs. Thus, this factor weighs strongly in favor of final approval.

[2] Rule 23(e)(2) was amended in 2018 to include a list of factors for courts to consider in evaluating a proposed settlement of a class action. The Third Circuit has, however, continued to apply the *Girsh* and *Prudential* factors. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 329 (3d Cir. 2019). Accordingly, this Court likewise focuses its analysis on the appropriate *Girsh* and *Prudential* factors.

**ii. The reaction of the class to the settlement**

"The second *Girsh* factor 'attempts to gauge whether members of the class support the settlement.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("*Warfarin*") (quoting *Prudential,* 148 F.3d at 318). The 31 opt-outs and no objections to the Settlement by Class Members strongly weigh in favor of approval of the Settlement. *See e.g.*, *NFL Players Litig.*,821 F.3d at 438; *Little-King v. Hayt Hayt & Landau*, No. 11-5621, 2013 WL 4874349, at *21 (D.N.J. Sept. 10, 2013) (collecting cases). *See e.g., Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir. 1990) (finding 29 objectors out of a class of 281 "strongly favors settlement"). This demonstrates that the Settlement Class has reacted positively to the Settlement.

**iii. The stage of the proceedings and the amount of discovery completed**

The third *Girsh* factor "captures the degree of case development that class counsel have accomplished prior to the settlement. Through this lens, courts can determine whether class counsel had an adequate appreciation of the merits of this case before negotiating." *In re Cendant Corp. Litig.,* 264 F.3d 201, 235 (3d Cir. 2001) (quotations omitted). "The fact that a case has not proceeded through discovery does not necessarily weigh against settlement approval." *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, No. 11-2164, 2017 WL 2734714, at *7 (D.N.J. June 26, 2017). "Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties." *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 482 (D.N.J. 2012). In this case, the parties have exchanged discovery and confirmatory discovery, including technical information regarding the Defect and warranty claim rates, engaged in motion practice, and participated in a full day of mediation. Thus, the parties had an adequate appreciation of the merits of the case. Accordingly, this factor weighs in favor of approval of the Settlement. *Cf. Weiss v. Mercedes–Benz of N. Am.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995) (approving a settlement even though case was still in the early stages of discovery).

**iv. The risks of establishing liability and damages**

Together, the fourth and fifth *Girsh* factors "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefit of an immediate settlement." *Warfarin,* 391 F.3d at 537. In other words, the Court must consider "what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *General Motors,* 55 F.3d at 814. The Court weighs the value of an immediate guaranteed settlement against the challenges that remain in proceeding with litigation. Before approaching a trial in this case, the parties likely would have disputed class certification, expert testimony, and moved for summary judgment – in addition to expending considerable resources on electronic discovery, depositions, and the expert witnesses that are necessary for class certification

and trial. It is unlikely that the case would have reached trial before 2028, while settling now will provide immediate benefit to the Settlement Class Members. At trial, there is no guarantee that Plaintiff would be successful in proving liability and damages. Even assuming a favorable trial outcome, Defendants might appeal, further delaying any benefit to the Class. Accordingly, given the real and extensive risks involved in Plaintiff's case, these two factors weigh in favor of approving the Settlement.

**v. The risks of maintaining the class action through the trial**

The sixth *Girsh* factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *Warfarin*, 391 F.3d at 537 (citations omitted). Defendants may oppose class certification and even if the Court were to certify a litigation class, the certification would not be set in stone. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); *Prudential*, 148 F.3d at 321 ("Under Rule 23, a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable."). Hence, since the class has yet to be certified and given the risks, this factor favors approving the Settlement.

**vi. The ability of the defendants to withstand a greater judgment**

Even if Defendants could withstand a much greater judgment, this fact has marginal relevance unless the ability of a defendant to survive a judgment is central to the negotiation process. *See McLellan v. LG Electronics USA, Inc.*, No. 10-3604, 2012 WL 686020, at *7 (D.N.J. March 2, 2012); *Warfarin*, 391 F.3d at 538 ("[The] fact that [Defendant] could afford to pay more does not mean that it is obligated to pay any more than what the ... class members are entitled to under the theories of liability that existed at the time the settlement was reached"). Defendants' resources do not affect the Court's determination to approve the Settlement. Thus, this factor is neutral.

**vii. The range of reasonableness of the settlement fund in light of the best possible recovery and all attendant risks of litigation**

The eighth and ninth *Girsh* factors analyze "whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin,* 391 F.3d at 538. "The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.* Here, the relief that the Settlement Agreement provides is within the range of reasonableness, especially in light of the best possible recovery and all the attendant risks of litigation. The Settlement provides significant relief to the Settlement Class in the form of out-of-pocket reimbursements for expenses related to qualifying repairs and a robust warranty extension. According to Plaintiff, the aggregate dollar value of the claims as of July 15, 2026 was $6,437,879.86. Rose Decl. ¶ 15. In light of the risks of proceeding with

litigation discussed above, and the certainty of the benefits provided by the Settlement, these factors weigh in favor of approving the Settlement.

### viii. The *Prudential* Factors

In addition to the *Girsh* factors, the relevant *Prudential* factors favor approving the Settlement. Regarding the maturity of the underlying issues, the commencement of discovery and preparation for a full day of mediation allowed the parties to determine the circumstances surrounding this litigation. *See, e.g., Weiss*, 899 F. Supp. at 1301 (approving settlement of case still in early stages of discovery). Class Members had ample opportunity to object or opt-out of the Settlement and were provided clear instructions on how to do so. *See supra,* I.C. The procedure for processing individual claims under the Settlement is fair and reasonable, providing for Settlement Class Members to be able to submit claims online or via a paper claim form. As explained in more detail below, the provision for attorneys' fees is also fair and reasonable. Finally, the Settlement also offers "direct benefits" to the settlement class given that all Class Vehicles' warranty will be extended as it relates to the Sealing Defect for free repairs or for reimbursement of Sealing Defect repairs. *See Baby Prods.*, 708 F.3d at 174. The Court approves the Settlement finding it to be fair, reasonable, and adequate.

## B. Class Certification

In order to approve a class settlement agreement as fair under Fed. R. Civ. P. 23(e), the Court must additionally determine that the requirements for class certification under Rules 23(a) and (b) are also met. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257 (3d Cir. 2009). Each Rule 23 requirement must be established by a preponderance of the evidence. *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015). While the class certification analysis may "entail some overlap with the merits of the plaintiff's underlying claim," the court considers merits questions only to the extent they are relevant to performing the "rigorous analysis" required to determine whether the Rule 23 prerequisites are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

### 1. Rule 23(a) Factors

Rule 23(a) provides that the class may be certified if: (1) the class is so numerous that joinder is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009) (quoting Fed. R. Civ. P. 23(a)). As discussed below, the Rule 23(a) requirements for class certification are satisfied.

### i. Numerosity

Numerosity is satisfied when joinder of all putative class members is impracticable. Fed. R. Civ. P. 23(a)(1). Where the number of potential plaintiffs exceed forty, the numerosity requirement is generally fulfilled. *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). Here, there are more than 463,000 current and former owners and lessees of approximately 233,000 Settlement Class Vehicles. Numerosity is therefore satisfied.

### ii. Commonality

Commonality requires that the members of the class must assert a common contention that is capable of classwide resolution such that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 489–90 (3d Cir. 2018) (quoting *Dukes*, 564 U.S. at 350); *see also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597 (3d Cir. 2012) (noting that the "commonality requirement 'does not require identical claims or facts among class member[s]" (citations omitted)).

In this case, the dispute involves common issues which include: whether the Settlement Class Vehicles contain the Sealing Defect; whether BMW NA had a duty to disclose the Sealing Defect but failed to do so; and, whether BMW NA had pre-sale knowledge of the Sealing Defect. The proposed class is sufficiently cohesive that the Class may use the same evidence to make a *prima facie* showing of their claims and those claims are subject to class-wide proof. Commonality and predominance requirements in Rules 23(a)(2) and 23(b)(3), respectively, are thus satisfied.

### iii. Typicality

"The concepts of commonality and typicality are broadly defined and tend to merge." *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (citation omitted). "The typicality inquiry centers on whether the interest of the named plaintiffs align with the interests of the absent members." *Stewart*, 275 F.3d at 227 (citation omitted). Thus, the typicality requirement ensures "that the class representatives are sufficiently similar to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the [absent] class members, and if it is based on the same legal theory." *Stewart*, 275 F.3d at 227–28 (quoting *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992)). For the typicality inquiry, a court thus compares "the attributes of the plaintiff, the class as a whole, and the similarity between the plaintiff and the class." *Marcus*, 687 F.3d at 598.

Plaintiff's claims here are typical because both Plaintiff and Class Members allege injury from the same alleged Sealing Defect and plead causes of action common to all Settlement Class Members. Furthermore, Plaintiff is not "subject to a defense that is both

inapplicable to many members of the class and likely to become a major focus of the litigation." *In re Schering Plough Corp.*, 589 F.3d at 599. Thus, Plaintiff stands in precisely the same position as the putative Class Members. The requirements of typicality are met.

**iv. Adequacy**

Adequacy "encompasses two distinct inquiries designed to protect the interests of absentee class members." *Prudential*, 148 F.3d at 312. "First, [it] tests the qualifications of the counsel to represent the class." *Id.* "Second, it 'serves to uncover the conflicts of interest between named parties and the class they seek to represent.'" *Id.* (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Matthew Schelkopf and Joseph Kenney of Sauder Schelkopf LLC ("Class Counsel") are experienced, familiar with the applicable legal issues, and qualified to represent the Class. *See* Preliminary Approval Order, ¶¶ 5, 7. Moreover, the Settlement was reached after arm's length negotiations and mediation. Regarding the second prong, there is no conflict of interest between Plaintiff and the Settlement Class Members because they all purchased Settlement Class Vehicles and were injured by the same alleged Sealing Defect. *Amchem*, 521 U.S. 591, 625–26. Thus, Plaintiff possesses the same interest and will adequately represent the interests of the Class. The adequacy requirement is satisfied.

**2. Rule 23(b)(3) Factors**

Next, in addition to Rule 23(a), class certification requires that a plaintiff also meet one of the requirements set forth in Rule 23(b). Plaintiff here specifically seeks certification of a settlement class under Rule 23(b)(3), which permits certification only if (1) questions of law or fact common to class members predominate over individual questions ("predominance"), and (2) a class action is the superior method for fairly and efficiently adjudicating the controversy ("superiority"). Fed. R. Civ. P. 23(b)(3). Factors relevant to a finding of predominance and superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). As set forth below, the predominance and superiority requirements of Rule 23(b)(3) are satisfied.

**i. Predominance**

Predominance requires the court to evaluate whether "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. Rule 23(b)(3). The inquiry, while similar to the considerations under Rule 23(a)'s commonality requirement, is a "far more demanding" standard that

requires the Court to determine if the proposed class is sufficiently cohesive that members of the class may use the same evidence to make a *prima facie* showing of their claims and those claims are subject to class-wide proof. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016); *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) ("where an action is to proceed under Rule 23(b)(3), the commonality requirement 'is subsumed by the predominance requirement." (internal quotations and citation omitted)). "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 298 (3d Cir. 2011); *see also Warfarin*, 391 F.3d at 528 (finding predominance in "broad-based" campaign to deceive providers and patients regarding a generic equivalent).

The Court must examine through the prism of Rule 23(b)(3) the elements of Plaintiff's claim and ask whether proof of the essential elements require individual treatment. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 266 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001)); *see also Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353, 370-71 (3d Cir. 2015). The mere existence of individual questions does not preclude a finding of predominance, nor does the possibility that some individualized inquiry as to damages may be required. *Neale*, 794 F.3d at 371. Rather, the Court engages in a qualitative examination of both common and individual issues. *Id.* (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013)).

Here, Defendants' manufacturing and sale of the Class vehicles with the Sealing Defect properly provide the basis for liability as to all potential Class Members. Common proofs required to demonstrate this violation predominate over individualized inquiries. No individual inquiry will be necessary regarding Defendants' liability to each Class Member. Predominance is satisfied.

**ii. Superiority**

Finally, to establish superiority, a plaintiff must demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry requires the Court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Danvers Motor Co.*, 543 F.3d at 149 (citation omitted).

The uniform nature of the Settlement demonstrates the superiority of resolving this case as a class action. The Settlement provides the Settlement Class with prompt and substantial benefits, including a claims process that is governed by objective requirements. Settlement Class Members who are dissatisfied with the Settlement have the right to object or to exclude themselves entirely. The Settlement also would relieve the substantial judicial burdens that would be caused by repeated adjudication of multiple similar lawsuits with relatively low dollar amounts by individual Settlement Class Members. No Class Member has brought a separate claim, which would likely be consolidated into this action anyway.

Litigating these claims separately would further unduly burden the judicial system. *Warfarin*, 391 F.3d at 534. Fairness and efficiency accordingly weigh in favor of a finding that a class action is the superior method of adjudicating these claims. Hence, a class action is the superior method of adjudication in this matter.

### C. Motion for Attorneys' Fees and Costs and for Service Award

Separate and apart from any relief provided to the Settlement Class, Plaintiff seeks a total attorneys' fees and expense award of $800,000, which initially included a lodestar fee of $405,295 for 608.40 hours of work, a multiplier of 1.97, and expenses of $9,390.04. Plaintiff also asks for approval of a $5,000 service award. Class Counsel also stated that they anticipated spending "an additional 150 hours between the filing of this declaration and the conclusion of the Warranty Extension Period." Schelkopf Decl. ¶ 12. However, the day before the July 28, 2026 Final Approval Hearing, Class Counsel filed a supplemental declaration for an additional 107.80 hours between the initial fee application through July 24, 2026[3] as well as reimbursement of an additional $16,500 for "preparation of an expert report" for total expenses of $25,890.04. Suppl. Decl. of Matthew Schelkopf ("Suppl. Schelkopf Decl.") ¶¶ 2-5, ECF No. 43.

#### 1. Attorneys' Fees

Generally, each party is responsibility for paying its own attorneys' fees and expenses, but that rule has exceptions including when: 1) fee-shifting is authorized by statute or contract; or 2) an agreement or court order creates a common fund. *Gelis v. BMW of N. Am., LLC ("Gelis II")*, 178 F.4th 810, 820 (3d Cir. June 11, 2026). *See also* Fed. R. Civ. P. 23(h) (providing that the Court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."). A third "hybrid exception" is a constructive common fund where "courts sometimes treat fee-shifting arrangements under the rules applicable to equitable common funds." *Gelis*, 178 F.4th at 821. The decision to award attorneys' fees and expenses is within the Court's discretion, but the Court must carefully review the negotiated award to ensure that it is fair, reasonable, and adequate. *Little-King*, 2013 WL 4874349, at *18; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 299-300 (3d Cir. 2005), *as amended* (Feb. 25, 2005) ("*Rite Aid*").

---

[3] In the initial fee application, Class Counsel indicated that they would submit detailed time to the Court and a supplemental time submission prior to the Fairness Hearing, *see* Pl. Fee Mot. 22, n.11, ECF No. 38-1, but did not state when they would do so nor were they firm in their commitment to provide that information. *See* Schelkopf Decl. ¶ 10 ("Due to the amount of privileged information contained in the hourly billing records, those detailed records are not attached here, but can be provided in camera should this Court wish to review them."). Accordingly, the Court requested the submission of detailed time by July 15, 2026. ECF No. 39. Counsel filed their supplemental fee application on July 27, 2026, but curiously, failed to provide a breakdown for the extra 107.8 hours requested despite clear indication that the Court requires such information. Counsel did, however, bring the detailed time breakdown to the Fairness Hearing.

In evaluating an award of attorneys' fees, courts typically apply one of two methodologies: (1) the lodestar method in which the number of hours worked by Class Counsel is multiplied by a reasonable hourly billing rate for such services; or (2) the percentage-of-recovery method in which Class Counsel is awarded a certain percentage of the total recovery of a common fund or settlement amount. *In re AT&T Corp., Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 279. The lodestar method is preferred for fee shifting cases while the percent-of-fund method is preferred for common-fund cases. *See Gelis II,* 178 F.4th at 821. This is a contractual fee-shifting case because Class Counsel seeks fees "pursuant to a contract—the settlement agreement—not pursuant to a statute." *Gelis v. BMW of N. Am., LLC (Gelis I)*, 49 F.4th 371, 381 (3d Cir. 2022) (citing *In re Home Depot Inc.*, 931 F.3d 1065, 1082 (11th Cir. 2019)); *Gelis II*, 178 F.4th at 821 (noting settlement agreement that shifts onus to BMW to pay attorneys' fees was a contractual fee-shifting arrangement). Accordingly, Class Counsel, in their initial fee application, advocated the lodestar method because "there is no common fund," Pl. Fees Mot. 13, ECF No. 38-1, as well as use a lodestar multiplier.

In some cases, where the lodestar total alone is not sufficient, the multiplier is "a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *Rite Aid*, 396 F.3d at 305–06 (footnote omitted). Multipliers may be used as a cross-check in common fund cases to adjust the lodestar calculation "to account for particular circumstances, such as the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risks involved." *In re AT&T Corp*., 455 F.3d at 164, n.4 (citing *Gunter v. Ridgewood Energy Corp*., 223 F.3d 190, 195 n. 1 (3d Cir. 2000)). In contrast, the use of a multiplier is restricted in statutory fee-shifting cases. *See City of Burlington v. Dague*, 505 U.S. 557, 567 (1992) ("[E]nhancement for contingency is not permitted under the fee-shifting statutes").

Less than one week before Plaintiff filed his attorneys' fee application, the Third Circuit held that "the Supreme Court's constraints on the use of lodestar multipliers in statutory fee-shifting cases also apply in contractual fee-shifting cases." *Gelis II*, 178 F.4th at 817; *see Dague*, 505 U.S. at 562, 567 ("[E]nhancement for contingency is not permitted under the fee-shifting statutes"). In fee-shifting cases, an attorney's contingent risk does not justify a multiplier because it is already subsumed in the lodestar and a lodestar enhancement "amounts to double counting." *Dague*, 505 U.S. at 562; *Gelis II*, 178 F.4th at 823 ("[T]he lodestar typically subsumed not only factors like complexity and contingency risk, but also superior results and performance" and "an attorney's skill is ordinarily reflected in her hourly rate." (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)). District courts may in theory still use lodestar multipliers but only "on the rare occasion when those factors are not already subsumed in the baseline lodestar, and only after overcoming the "'strong presumption' that the lodestar figure is reasonable." *Gelis II*, 178 F.4th at 824 (citing *Perdue*, 559 U.S. at 554). The fee applicant who seeks more than the lodestar bears the burden of showing that a fee enhancement is "*necessary* to the

determination of a reasonable fee." *Dague*, 505 U.S. at 562 (citing *Blum v. Stenson,* 465 U.S. 886, 898 (1984)); *Augustyn v. Wall Twp. Bd. of Educ.*, 139 F.4th 252, 260 (3d Cir. 2025) (reiterating that if the court deviates from the lodestar, "it must give 'a reasonably specific explanation for all aspects' of its decision to do so." (citing *Perdue*, 559 U.S. at 558)).

While Counsel admitted to being "aware" of *Gelis II* at the time of the filing of Plaintiff's initial fee application, Counsel did not address the Third Circuit's decision except to indicate that they intended to file a supplemental brief "closer to final approval" that would "address the limited impact of *Gelis* on this case at that time." Pl. Fees Mot. 26, n.12. A few days before the Final Approval Hearing, on July 24, 2026, Counsel filed as an exhibit a declaration from an actuarial expert to "value the Settlement as a constructive common fund" but did not include any other briefing or explanation as to why the valuation was being offered. *See* Decl. of Andrew Kerper ("Kerper Decl.") ¶ 7, ECF No. 42. Only *during* the Final Approval Hearing did Counsel articulate for the first time that the declaration was in support of their change in position that the settlement should be treated as a constructive common fund, which would allow the Court to use the percentage of the fund method to calculate fees rather than the lodestar method. *Gelis II,* 178 F.4th at 821 (citation modified) ("[C]ourts may treat contractual fee-shifting awards as common funds—and therefore exercise greater scrutiny of attorneys' fees—to protect a class's recovery."). The Court permitted Counsel to file a supplemental brief by August 4, 2026 to address the issue.

Where, as here, the settlement and the fee "are paid from the same source—in this case, [BMW]—the arrangement 'is, for practical purposes, a constructive common fund.'" *Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x 191, 197 (3d Cir. 2014) (citing *General Motors*, 55 F.3d at 820-21). Even so, the "ultimate choice of methodology" to calculate a fee award in a constructive common fund case still "rests within the district court's sound discretion." *General Motors,* 55 F.3d at 821.

"The lodestar and the percentage of recovery methods each have distinct attributes suiting them to particular types of cases." *Id.* The percentage of recovery method is used "in common fund cases on the theory that the class would be unjustly enriched if it did not compensate the counsel responsible for generating the valuable fund bestowed on the class." *Id.* On the other hand, the lodestar method is "de-coupled from the class recovery" and ensures that counsel receive "an adequate fee irrespective of the monetary value of the final relief achieved for the class" and also "has appeal where as here, the nature of the settlement evades the precise evaluation needed for the percentage of recovery method." *Id.* "Certainly, the court may select the lodestar method in some non-statutory fee cases where it can calculate the relevant parameters (hours expended and hourly rate) more easily than it can determine a suitable percentage to award." *Id.*

Here, setting aside that Counsel waited until the Final Approval Hearing, nearly two-months after the *Gelis* decision, to notify the Court of their change in position on how

fees ought to be calculated, the actuarial expert's total forecasted reimbursement benefit valuation of $11.70 million is based on underlying "judgmental assumptions" and reflects "inherent uncertainty." *See generally* Kerper Decl., ¶¶ 9, 10, 15, 16. For example, Plaintiff's valuation relies on a "monthly frequency" of claims, which is a best "estimate" of the percentage of vehicles "likely" to experience a Shark Fin Antenna failure during the warranty period increased by an unexplained 20%. *Id.* ¶ 9(d). The resulting total valuation is simply too speculative to apply the percentage of recovery method. *See e.g., Flynn-Murphy v. Jaguar Land Rover N. Am., LLC*, No. 20-14464, 2025 WL 3771284, at *4 (D.N.J. Dec. 31, 2025) (holding that primarily analyzing the fee award first under the lodestar method in a constructive common fund case was appropriate where the monetary value of the settlement evaded the "precise evaluation needed for the percentage of recovery method" (citing *General Motors*, 55 F.3d at 821 and other cases), *appeal pending*; *Rieger v. Volkswagen Grp. of Am., Inc.*, No. 21-10546, 2024 WL 2207439, at *7 (D.N.J. May 16, 2024) (using the lodestar method "where there is no common settlement fund from which to pull fees or a definitive means of calculating the total monetary value of the settlement" because settlement involved extended warranty and reimbursement of out-of-pocket repair costs); *General Motors*, 55 F.3d at 822 ("Given our skepticism of the settlement's value generally and of [plaintiff's expert's] estimates in particular ..., we are much less sanguine that the $9,500,000 fee actually constitutes an acceptable percentage of the class recovery"). Thus, the Court concludes that the lodestar method to calculate fees is appropriate in this case.

*a. Lodestar Method*

To obtain the baseline lodestar, the attorney's "appropriate hourly rate" is multiplied by the number of hours the attorney "reasonably expended on the action." *McCutcheon v. Am.'s Servicing Co.*, 560 F.3d 143, 150 (3d Cir. 2009). "Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing *Blum v. Stenson,* 465 U.S. 886, 895 (1984)). Then, in "calculating the hours reasonably expended, a court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (citation modified). The court may also "deduct hours when the fee petition inadequately documents the hours claimed." *Rode*, 892 F.2d at 1183. Once the lodestar is obtained by multiplying the rate by the reasonable hours expended, the "court can adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained." *Id.*

Here, Class Counsel's hourly rates range from $150 for paralegals and law clerks, $350 for associates, and $675-$925 for partners. *See* Schelkopf Decl. ¶ 8. The Court finds that Class Counsel's hourly rates are reasonable and consistent for legal services in this region. *See Rieger*, 2024 WL 2207439, at *7 (approving $475 per hour for an associate with six years of experience to $950 per hour for a partner with 30 years of experience and

$540 to $1,075 for attorneys and $280 to $445 for paralegals and analysts). The Court also concludes that the 716.20 hours worked is also reasonable based on its *in camera* review of the time charged. Multiplying the number of hours expended by the reasonable hourly billing rates yields the total lodestar amount for Class Counsel of $468,022.50.

Finally, the additional 150 hours between an order granting final approval of the Settlement and the conclusion of the extended warranty period that Class Counsel anticipates working on claims, final approval, and settlement administration is also approved as reasonable. Suppl. Schelkopf Decl. ¶ 3. The lodestar for future work, calculated at the reasonable blended rate of $666/hr., is $99,900. *See In re Wawa, Inc. Data Sec. Litig.*, No. 19-6019, 2024 WL 1557366, at *20 (E.D. Pa. Apr. 9, 2024), *aff'd*, 141 F.4th 456 (3d Cir. 2025) (noting "courts in the Third Circuit have accepted blended hourly rates in this $600+ range"). The total lodestar is $567,922.50. Class Counsel has not offered any specific evidence to overcome the strong presumption that the baseline lodestar figure is reasonable or to show that this is a "rare and exceptional case" where there is basis to use a multiplier to enhance the lodestar.

*b. Percentage of Fee Method*

Next, the Court cross-checks its lodestar fee calculation against the percentage of fee method. *See Rite Aid*, 396 F.3d at 300. The Third Circuit has identified a number of factors for the Court to consider in determining whether a fee award is reasonable under the percentage-of-recovery analysis including factors such as the size of the fund created, the number of persons benefitted, and the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel. *See Gunter*, 223 F.3d at 195 n.1; *In re Diet Drugs (Phentermine/Flenfuramine/Dexflenfuramine) Prods. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009). Where the percentage of recovery method is employed as a cross-check, the analysis may be abbreviated. *See Rite Aid*, 396 F.3d at 305 (approving "abridged" lodestar analysis when used as cross check); *Flynn-Murphy*, 2025 WL 3771284, at *18.

As of the date of the Final Approval Hearing, the claims administrator received 3,062 claims and only one subsequently withdrawn objection. Class Counsel has generally exhibited skill and efficiency and has devoted an appropriate amount of time to this case. Moreover, some of the other *Gunter* factors overlap with those already considered by the Court in approving the Settlement as fair, reasonable, and adequate. Finally, the total fee and expense award of $593,712.54 ($567,922.50 fees plus $25,890.04 expenses) is 5.08% of a constructive common fund of $11.70 million, which is close to the 6.84% combined fee and expense request of $800,000 requested by Class Counsel.

**2. Expenses**

Class Counsel's unopposed request for reimbursement of $25,890.04 in litigation expenses incurred to prosecute this case is approved. *See* Suppl. Schelkopf Decl. ¶ 4; *see*

*also* ECF No. 46. Class Counsel is "entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001). These expenditures, which are for court fees, postage and mailing, and mediation fees "are the type of expenses routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund." *In re Ocean Power Techs., Inc.*, No. 14-3799, 2016 WL 6778218, at *29 (D.N.J. Nov. 15, 2016); *see also In re Safety Components*, 166 F. Supp. 2d at 108 ("witness fees and the costs associated with expert witnesses and consultants are often deemed incidental to litigation").

### 3. Case Contributions to Representative Plaintiff

Plaintiff seeks a representative award of $5,000. The Court finds the requested case contribution award to be fair and reasonable. The Class representative's time and effort to this case was spent participating in numerous conferences and meetings with his attorneys, searching for and producing documents to his attorneys, and staying "involved" in the developments in the case. While such assistance appears to be no more than "run-of-the-mill," *see Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 771 (E.D. Pa. 2016), the requested award is unopposed and does not take away from the relief afforded the Class. Therefore, the Court approves a $5,000 case contribution award to Plaintiff.

## III. CONCLUSION

In sum, the Settlement, which has no objectors, is fair, reasonable, and adequate under Fed. R. Civ. P. 23(e), notice was adequate, and certification of the proposed Class is appropriate under Rules 23(a) and (b). Thus, Plaintiff's unopposed motion to certify the Class and for final approval of the Class Action Settlement is **GRANTED.**

The motion for attorneys' fees and expenses is **GRANTED IN PART**. Using the lodestar method, the total fees and expenses awarded is <u>$593,812.54</u>, which includes $468,022.50 for 716.20 hours of work, $99,900 for 150 hours of future work, and expenses of $25,890.04. No lodestar multiplier is appropriate. Plaintiff's request for a <u>$5,000</u> service fee award is **GRANTED**. An appropriate Order follows.

**WILLIAM J. MARTINI, U.S.D.J.**

**Date: August 17, 2026**